Eastern District of Kentucky
F I L E D
NOV 0 8 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-613-GWU

SANDRA ELLIOTT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Elliott

> Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Elliott

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Elliott

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sandra Elliott, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of fibromyalgia, migraine headaches, a seizure disorder, and mood disorders. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Elliott retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional impairments. She: (1) could occasionally climb, stoop, and crawl; (2) could not perform work around dangerous machinery or unprotected heights; and (3) had a "limited but satisfactory" ability to deal with work stresses and deal with the public and a "seriously limited but not precluded" ability to maintain attention and concentration. (Tr. 289-91). The VE responded that there were jobs that such a

Elliott

person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 290-1).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

As the plaintiff points out on appeal, the ALJ rejected the opinion of the only psychological examiner, Christopher Catt, a licensed clinical psychologist, who examined the plaintiff on August 12, 2004 and diagnosed a recurrent "moderate to severe" major depressive disorder, with a current Global Assessment of Functioning (GAF) score of 50. (Tr. 174). A GAF score of 50 represents "serious impairment in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. In terms of specific functional restrictions, the psychologist stated that Mrs. Elliott would have a "marked" limitation in her ability to sustain attention and concentration for the performance of simple, repetitive tasks, to tolerate the stress and pressure of day-to-day work activity, and to respond appropriately to supervision, co-workers, and work pressures in a work setting. (Tr. 174). He felt she would have "moderately" limited ability to understand, remember, and carry out simple repetitive tasks. (Id.).

The ALJ rejected these restrictions, citing the opinion of state agency reviewing psychologists Ann Demaree and Jay Athy, in addition to his own review of the plaintiff's medical and work history, which he felt showed no indication that the

8

Elliott

plaintiff had ever lost a job due to a mental disorder. (Tr. 22). He also noted that the psychologist apparently placed significance on the plaintiff's "[purported] inability to count serial threes or remember her activities the previous day," but "was able to thoroughly relate her medical and social histories without problem." (Id.). Nor had the ALJ noticed a severe impairment in the plaintiff's ability to concentrate or remember at the administrative hearing. (Id.). Dr. Demaree, with whom Dr. Athy agreed, had written that Dr. Catt's opinion should be weighed in light of the plaintiff's activities of daily living and the rest of her history, pointed out that the plaintiff had never lost a job due to a mental disorder, and also considered it significant that her treating family physician had never mentioned a major problem with depression. (Tr. 211).

Generally, the opinion of a non-examining reviewer may be accepted over that of an examiner such as Dr. Catt where, as here, the non-examiner has had access to all the evidence and clearly stated the reasons for her difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). While the plaintiff objects to the rejection of Dr. Catt's opinion, Dr. Demaree provided specific reasons for disagreeing and, as a one-time examiner, Dr. Catt was not entitled to the deference due to a treating source.

However, although a reasonable basis was provided for rejecting the examiner's opinion, the ALJ gave no reason for declining to accept the limitations given by Medical Reviewers Demaree and Athy. Both of the sources completed

9

mental residual functional capacity assessments stating that the plaintiff would have a "moderately limited" ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. (Tr. 207-8, 240-2). Given that most of these factors are not present in the hypothetical, the question is not supported by substantial evidence.

The plaintiff raises two other issues on appeal.

First, she asserts that it was error for the ALJ not to find her allegation of back pain to be a "severe" impairment. However, although there are records that the plaintiff complained of low back pain on occasion prior to her alleged onset date of April 24, 2003, e.g., in 1998 (Tr. 129-30, 135-6), and some abnormalities were noted on an x-ray in October, 2002 (Tr. 142), evidence supporting low back pain after her alleged onset date is limited. Degenerative disc disease was shown on an MRI in April, 2003, but there was no evidence of herniation or spinal stenosis. (Tr. 141). Mrs. Elliott's family physician, Dr. Steven Morton, listed chronic low back pain among her diagnoses in 2003 (e.g., Tr. 153,159), but he apparently did not make any specific physical findings or list any restrictions. The plaintiff's treating neurologist, Dr. Cary Twyman, did not note any physical findings due to low back pain until

Elliott

September 7, 2004 (Tr. 176A), and he did not provide any functional limitations.[1] Therefore, the ALJ could reasonably have determined that the plaintiff had not carried her burden of showing that low back pain had resulted in functional restrictions lasting for a period of 12 months or more; moreover, there was certainly no reason, even if such a "severe" condition existed, to consider her more limited than in the hypothetical question.

The plaintiff also asserts that the hypothetical question did not provide sufficient limitations based on her diagnoses of a seizure disorder. In addition to the factors related to changes in medication noted by the Commissioner in her Motion for Summary Judgment, Docket Entry No. 22, pp. 11-12, the plaintiff did not produce evidence from any medical source that she would be more limited than found by the ALJ.

The decision will be remanded for further consideration of the mental limitations noted by Demaree and Athy.

This the ____8____ day of November, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[1] The plaintiff apparently described her back pain to Dr. Twyman as "moderate." (Tr. 176A).

11